## CHURCH v. ALABASTINE CO.

(Circuit Court of Appeals. Sixth Circuit. October 5, 1926.)

Patents 328.

Patent, No. 1,166,325, December 28, 1915, for ornamental and sanitary covering of walls and ceilings, held invalid, and not infringed, if valid.

Appeal from the District Court of the United States, for the Western District of Michigan; Clarence W. Sessions, Judge.

Patent infringement suit by Melvin B. Church against the Alabastine Company. From a decree dismissing the bill, plaintiff appeals. Affirmed.

Ellis Spear, Jr., of Boston, Mass. (Eiffel B. Gale, of Yonkers, N. Y., on the brief), for appellant.

Roger I. Wykes, of Grand Rapids, Mich. (Fred L. Chappell, of Kalamazoo, Mich., on the brief), for appellee.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DONAHUE, Circuit Judge. This is an appeal by the plaintiff, Melvin B. Church, from a decree dismissing his bill of complaint charging the appellee, The Alabastine Company, with infringement of United States letters patent, No. 1,166,325, issued to Melvin B. Church, December 28, 1915. After the decree was entered in the District Court, Melvin B. Church died, and this appeal was revived in the name of Melvin Clay Church, as special administrator of the estate of Melvin B. Church, deceased.

The patent in suit relates to the ornamental and sanitary covering of walls and ceilings, and purports to be an improvement in methods of preparing decorative mixtures then in use, and particularly the compounds described in patent No. 513,003, to Melvin B. Church, and in patent No. 521,143, to Robert E. Haire, of London, England, each of which patents relates to improvements in methods of preparations and mixtures in the wall decorating art.

Church's claim of invention is predicated upon his alleged recent discovery, after many years of experimenting, of the advantage of the use of uncalcined gypsum as a base for water-mixed wall paints with improvement of the flow of the material under the brush and the durability of the surface covering, fully maintaining the sanitary conditions and improving the wall covering in its application and appearance. In the specifications of the patent in suit Church describes his process of manufacturing as follows:

"I take the natural uncalcined gypsum and animal glue finely divided and thoroughly and evenly mixed in dry form. * * * It may also be prepared under wet conditions and so marketed in paste form, being subsequently diluted according to the judgment of the workman; but when a more opaque covering is required, as in frescoing or calcimining, I add to the uncalcined gypsum and glue inert substances, such as whiting or clay, and these may be used with coloring matters if desired."

The claims of the patent in suit are copied in the margin.[1]

Raw gypsum is a hydrous sulphate of lime. Pure gypsum contains calcium sulphate, 79.10, and water, 20.90, its chemical formula being $CaSO_4 + H_2O$. When coarsely ground, it is commercially known as landplaster; and when finely ground, as terra alba. It is also known in the paint-manufacturing art as calcium sulphate. In its natural state it is an inert mineral. When partially calcined it becomes active, and will reabsorb all the water of crystallization

[1] 1. A surface water coating composition, comprising finely pulverized uncalcined gypsum and glue.

2. A surface water coating composition, comprising finely pulverized uncalcined gypsum and glue mixed with whiting.

3. A surface water coating composition, comprising finely pulverized uncalcined gypsum mixed with an inert powder and glue.

4. A surface coating composition, comprising animal glue, mixed with pulverized uncalcined gypsum, and an inert powder in the proportions substantially of 40 per cent. uncalcined gypsum and 60 per cent. of the inert powder.

5. A surface coating composition, comprising finely pulverized uncalcined gypsum as a foundation, mixed with a comparatively small proportion of glue, substantially as described.

6. A surface coating composition, comprising finely pulverized uncalcined gypsum, mixed with whiting as a foundation, and a comparatively small proportion of glue.

7. A surface coating composition, comprising finely pulverized uncalcined gypsum mixed with an inert powder as a foundation, and a comparatively small proportion of glue.

driven off by partial calcination, develop heat, and reform into crystals. Full calcination consists in heating the raw gypsum until all the free water and all the water of crystallization is driven off. It then becomes a "burned" or "dead" powder, and in this condition it is not useful as a base in the preparation of wall-decorating compounds, but is used in government paint specifications. Partial calcination consists in heating the gypsum until all the free water and part of the water of crystallization is driven off. When 75 per cent. of the water of crystallization has been removed by the calcining process, the product is then known as plaster of paris. In this condition it sets very rapidly when water is added, and for this reason, when used as a base for water-mixed or distemper paints, glue, or an inert powder, or both, are used to retard the setting. Glue is also used to give the mixture adhesive qualities.

While plaster of paris is only partially dehydrated gypsum, nevertheless it is commercially known as calcined gypsum. Aside from this, the evidence is not clear as to the extent to which the dehydrating process must be continued before the gypsum becomes calcined, as that term is used in the art. There is some evidence, however, tending to prove that, if the calcining process has been continued to such an extent that the gypsum is no longer inert, but will function as calcined gypsum, then it is calcined gypsum. This is rather indefinite, for the reason that, when any substantial part of the water of crystallization is driven off, by partial calcination, it will function as calcined gypsum to the extent of reabsorbing an equal amount of water.

Whiting is plaster of paris which has reabsorbed the water of crystallization driven off by calcination and allowed to reset and then reground. In this condition it is an inert powder.

It is not seriously insisted that the appellee's composition infringes either claims 1 or 5 of the Church patent, for the reason that no claim is made that appellee uses only raw gypsum as a base for its products. Church testified that the defendant infringed all except these two claims, and later qualified this by saying that these claims are technically infringed. The second, third, fourth, sixth, and seventh claims are for a surface coating composition containing pulverized uncalcined gypsum, animal glue and inert powder. The fourth claim specifies "substantially 40 per cent. uncalcined gypsum and 60 per cent. inert powder." Claims 2 and 6 specify whiting as the inert powder to be used with pulverized uncalcined gypsum as a foundation.

There is nothing new in the use of whiting or other inert powders as a base for water-mixed paint or wall covering of the character described in this patent. For this reason the validity of these claims depends wholly upon whether it is, or is not, invention to use raw gypsum in connection with whiting or other inert powder as a base for wall covering and other surfaces. If the use of raw gypsum in connection with whiting or other inert powder is not new to the art, and it is still insisted that claim 4 is valid because the proportions therein named constitute invention, it is sufficient to say that appellee's product does not infringe, even if appellant is correct in his contention that it contains 15 per cent. of raw gypsum and 85 per cent. of whiting.

It is insisted on the part of the defendant that plaintiff's claimed invention was anticipated by a number of prior patents, and that uncalcined gypsum is not new to the art, but was known and publicly used as a base and pigment, especially in the manufacture of wall covering and distemper paints, long prior to the time Church filed his application for the patent in suit.

In 1892 Romulus Norwood obtained a British patent for both process and compound, which specified a mixture consisting of liquid animal glue, mixed in suitable proportions with a suitable base, such as gypsum, or wholly or partially calcined gypsum, subjecting the same to heat sufficient to drive off the water from the glue and the water of crystallization from the gypsum. This patent was later revoked, because issued in fraud of Church's rights, and reissued to Church in July, 1895, upon complete specifications containing, among other things, the following statement: "That which I term a nonsetting preparation can be made, however, with uncalcined gypsum by the above method, by not using heat strong enough to calcine the gypsum." That disclosure, publicly made by Church in 1895, is in form and substance the same as Church claimed in his specifications for the patent in suit as the recent discovery upon which he based his claim of invention.

It is now insisted upon behalf of appellant that the British patent introduced in evidence upon the trial of this cause was later recalled; that Church was required to strike this paragraph from his original specifications, and the British patent, as finally issued to Church, did not contain this par-

agraph in reference to the use of uncalcined gypsum in a nonsetting preparation practicable as a wall coating. That fact, if it is a fact, does not appear from this record; but, even if that were conceded, the public disclosure by Church in 1895 in his original specifications for his British patent, a copy of which, without change, has been on file in the library of the United States Patent Office since November 7, 1895, that uncalcined gypsum could be used as the base of a nonsetting preparation practicable for a wall coating, directly contradicts and disproves the statement in the specifications of the patent in suit that he had but recently made that discovery. His attempted explanation in his oral testimony as to his reasons for making that public disclosure, which he now claims he did not then know to be true, is wholly unsatisfactory and unconvincing, especially as he must have known of the disclosure in the Norwood patent, which he successfully claimed was issued in fraud of his rights, and which also contained the statement that raw gypsum or partially calcined gypsum is suitable as a base for wall coverings. Bone v. Marion County, 251 U. S. 134, 144, 40 S. Ct. 96, 64 L. Ed. 188; One-Piece Bifocal Lens Co. v. Bisight Co. (D. C.) 246 F. 450, 457.

Even if it were permissible for this court to accept the exhibits attached to the brief of counsel for appellant as evidence in support of the claim that the British patent to Church, appearing in the record, was recalled and another patent issued to Church, which does not contain any such specification, it further appears from the same exhibits that this action was based upon the sole ground that these particular parts of Church's specifications called for the equivalent of the inert base of Norwood's second British patent, No. 21,374, which had not been revoked. In view of the fact that Church accepted this decision of the Comptroller General, and amended his specifications to comply therewith, and accepted the British patent upon these terms, he is hardly in position now to claim that an inert base of raw gypsum is not the equivalent of "whiting or other inert base," as specified in Norwood, No. 21,374.

It is unnecessary to review in detail the prior patent art in the United States. Copperwall & Brando (No. 319,792), Morris (No. 424,653), Coughig (No. 432,118), King (No. 670,678), Adams (No. 730,505 and No. 730,506), specifically mention plaster, terra alba, or gypsum, either alone or mixed with other inert powders, as a suitable base for water mixed paint. Moore (No. 446,949) in 1892 refers to gypsum as a base then in common use.

Church, No. 513,003, mixes the liquid glue with "the calcined gypsum or other base." Haire (No. 521,143) uses as a base "calcined gypsum or an inert base, such as chalk, or dry paint, or like substances." It is conceded by Church in his oral testimony that the specifications of the Haire patent are sufficiently broad to include all known pigments; that in 1892 and prior thereto raw gypsum, known as terra alba, land plaster, or calcium sulphate, was in common use as a pigment or base for paints, but that he did not then know, what seems to have been commonly known by those skilled in the art, that it would function better with water as a vehicle than with oil.

Church's familiarity with the art is shown by the numerous patents issued to him. Reference is made to some of these patents in the specifications of the patent in suit, particularly No. 161,591, which he claims was the first disclosure of a compound having a base of calcined gypsum and glue dissolved in hot water prior to mixing with the gypsum; No. 255,937, in which sulphate of zinc is added to the mixture of his first patent; No. 513,003, in which the glue and base are mixed in the commercial product, requiring only the use of cold water to thin for use. The specifications of the patent in suit also refer to the Haire patent above mentioned and to the use of uncalcined gypsum in the manufacture of artificial marble. In Hoopes (No. 223,735) raw gypsum is used as a base in the making of imitation marble, which may be thinned to admit of its being applied to walls, floors, etc., with a brush, as an ordinary paint. Watson, No. 522,634 (1894), in the preparation of material for calcimining, uses raw gypsum with calcined gypsum and adhesive matter, first mixing the adhesive matter with the calcined gypsum, then adding the raw gypsum, after which it is dried at a temperature usually not exceeding 212 degrees Fahrenheit; but, where it is desired to expel the water of crystallization, the heat may be cautiously raised as high as 250 degrees Fahrenheit. This is in direct conflict with the claim of Church that heat sufficient to calcine the gypsum would destroy the adhesiveness and solubility of the glue.

The evidence is also practically conclusive that raw gypsum (terra alba) has been known and used in the art as a base or pigment for water-mixed and oil paints many

years prior to the filing of the application for the patent in suit, but has not proved so satisfactory with oil as with water. This appears, not only from the oral testimony, which it is unnecessary to discuss at length, but also from the literature of the art, in which formulas are given for the manufacture of "alabaster wall finish," alba white, and other mixtures of like character having different trade-names. These formulas include, among other things, terra alba, pulverized alum, and sulphate of zinc. One author, Van Nestrand (1907), says: "The Pennsylvania Railroad, in its freight car color, permits the use of 70 per cent. gypsum, and as good results have been obtained by this company in the use of calcium sulphate as a filler. The condemnation of the material is without foundation." The August, 1921, issue of the Painters' Magazine, in response to an inquiry regarding the properties of gypsum, its uses in the painting trade, and the possibility of procuring a patent for such uses, contains the following statement: "Gypsum is a natural pigment, that has been in use as a paint material, either alone or in combination with coloring substances, for centuries, and therefore cannot be patented."

It further appears that the Muralo Company for many years prior to 1914 used terra alba with whiting and clay in the manufacture of its products, and that, whenever there was a shortage of whiting, it used nothing but terra alba as a base. Terra alba was also used by the Muralo Company in the preparation of its standard goods for private customers, who desired special trade-names, such as Kalkamo for the Pittsburgh Plate Glass Company, Dec-O-Tint for the Sherwin-Williams Company, and the like. It is claimed by appellant that terra alba was not used in the higher grade of wall coating, but only in the coarser grades for mills and factories; but the Muralo Company did use terra alba in the manufacture of Calcino, which is admittedly a high-class covering for interior surfaces. The fact that this company preferred to use whiting when available in no wise affects the question of prior use of raw gypsum in the better class of wall paints. There is also evidence tending to prove that the Church Paint Manufacturing Company, of St. Paul, Minn., and the Water-Paint Company of America, successfully used raw gypsum, or raw gypsum and whiting, in the manufacture of their high grade products.

It is further insisted upon the part of the appellant that the invention of the patent in suit does not consist alone in the use of raw gypsum or raw gypsum with whiting or other inert powder, but also includes the fine grinding possible only in the Church attrition mills, as described in Church No. 259,495. The mill of that patent is distinguished from the mill of the prior art in that the material is ground between "substantially smooth surfaces of stones with the under stone smooth and the upper dished and slightly separated, in a space kept uniformly and constantly crowded full, whereby the goods are caused mainly to grind by attrition and crushing of particles with particle of their own substances," while the mills then in common use had furrows approximately radial in the grinding faces of the upper and lower stones.

The claims in suit do not call for any special form of grinding or grinding in any particular mill, but only for "finely pulverized uncalcined gypsum," nevertheless, if such a provision were read into these claims by intendment, the evidence is practically conclusive that the defendant does not use Church's attrition mills with the smooth surface stones, but, on the contrary, uses and has used for the last 20 or 25 years the furrowed stones of the prior art, the only change therein being an emery skirt added to the peripheries of the grinding stones, and except for this addition of the emery skirt there has been no change whatever in the grinding of defendant's material. It is also in evidence that the Church Paint Manufacturing Company of St. Paul, Minn., in 1890 and subsequent thereto, used 90 per cent. finely ground raw gypsum in the manufacture of that company's product. William Church, who was the owner of that factory, testified fine grinding was essential to success. Scott, in his work on "White Paint and Painting Materials," says, in connection with terra alba as a pigment: "It is usually ground very fine, such a texture being necessary for pigments used in paint." There are also a number of other patents of the prior art which specify finely ground or pulverized gypsum.

If, however, the validity of the patent in suit were conceded, the evidence wholly fails to show infringement. The defendant's compound, when first mixed, does contain 15 per cent. of raw gypsum, 85 per cent. whiting, 4½ pounds of glue, and a small quantity of Krannenberg's dope, the utility of which is admitted by Church in his letters to Krannenberg. It is then mixed in liquid form, so that it will "run like cream," and subjected to a heat 2 to 2½

hours, varying from 150 degrees Fahrenheit when first put in the kettle to 240 degrees Fahrenheit when removed therefrom. This is substantially the teaching of the Watson patent of 1894. As in Watson, this results in the calcination or partial calcination of the raw gypsum, so that appellee's finished product contains no raw gypsum, but, on the contrary, gypsum that has been calcined approximately to the extent of 66 per cent., some tests running as high as 70 per cent., with some as low as 30.5 per cent. It further appears from the evidence that this percentage of calcination does not refer to a percentage of the mass, but by reason of the agitation of the material in the kettle while being subjected to this heat, each particle of the gypsum is calcined to the extent mentioned.

The appellant, in the preparation of his mixture, uses heat only to the extent necessary for drying and is careful to keep the heat below 212 degrees Fahrenheit, so that his product contains neither calcined nor partially calcined gypsum, but only raw gypsum, while the finished product of the appellee contains no raw gypsum, but gypsum calcined, or partially calcined, to the extent that it is no longer inert, but functions as calcined gypsum.

For the reasons stated, the decree of the District Court is affirmed.