Leo W. Burk, Danville, Ill., Burk, Twomey & Meyer, Danville, Ill., Morsell & Morsell, Milwaukee, Wis., for defendant.

## LOSEE PRODUCTS CO. v. BLACK & CO.

### No. 687-D.

United States District Court
E. D. Illinois.

Sept. 20, 1949.

LINDLEY, Judge.

In reopening this case I limited the issue to the effect of British patent 417 of January 7, 1914 to Harrison. Plaintiff contends that this patent fails to disclose anything that was not previously claimed to have been taught by McQuinn and does not infringe upon the invention which I have heretofore attributed to Losee, whereas defendant argues that, as a prior printed publication, its effect is to defeat any claim of invention on the part of Losee and render invalid the Losee Reissue patent on which plaintiff's suit is based.

The structure and mode of operation of the Losee heater is set out in Findings of Fact 21 through 27 which accompany the memorandum originally entered in this case. Findings 21, 22, and 23 are as follows:

"21. Losee's electric water heater is a storage water heater having hot water al-

ways present and always capable of immediate withdrawal at the instant it is needed.

"22. The Losee heater is a non-pressure heater, operating by pour-in gravity displacement.

"23. The construction of the Losee heater, and particularly the normally empty and open outlet placed at the very top of the heater, insures that the hot water will always be kept entirely within the heat insulating enclosure, with a complete impossibility of there being hot water in the portion of the pipes extending through the insulating enclosure or standing in the inlet tank."

With respect to these three Findings, what I said of the Losee heater seems to me to be equally true of the heater disclosed in Figure 2 of Harrison's British patent.

However, referring to Findings 24 through 27, plaintiff argues that certain features there mentioned are not present in the Harrison patent. More specifically, plaintiff maintains, (1) that, whereas Losee locates the heating element and thermostat at or near the bottom of the tank, Harrison's heating element is not so placed and is not controlled by a thermostat; (2) that, although Losee's heating element can not be exposed and burnt out and Losee's heater cannot run dry, Harrison's heating element can burn out and his heater can boil dry; and (3) that Losee's heater can be operated as a 250 watt heater but that Harrison's can not, because its heat loss so far exceeds that of plaintiff's heater that, if operated in a milk house, it would require several times the heat energy required by Losee's product.

■ Plaintiff argues that the fact that the electric heating element in the British patent is located on the sides of the insulated enclosure, extending from the bottom approximately halfway up the inner tank, when considered in connection with the fact that it is not thermostatically controlled, impels one inevitably to the conclusion that Losee, whose thermostatically controlled heating element is inserted through the bottom of the inner tank, was not anticipated by Harrison. With respect to the location of the heating element in the Harrison patent, we must keep in mind the fact that in Figure 2 it is provided that the heat will be supplied at the bottom of the tank, though by means of gas rather than electricity. Furthermore, it seems clear that the electric heating element in the Red-E-Hot heater, which is inserted through the bottom of the tank and extends halfway up the length of the tank, could and would produce a result substantially the same as that effected by having two heating elements located on opposite sides of the tank and extending from the bottom halfway up, as shown in Harrison's Figure 1. If this conclusion is correct, plaintiff is in the anomalous position of contending, for the purpose of showing that defendant's heater infringes on its patent, that the heating element in the Red-E-Hot heater is substantially equivalent to that in plaintiff's heater, but denying, for the purpose of showing that its heater was not anticipated by Harrison, that the heating element in Harrison, which is substantially equivalent to that in the Red-E-Hot heater, is at all similar to the one in plaintiff's heater.

■ To plaintiff's contention that the British patent not only fails to show a thermostat but impliedly rejects its use, defendant replies that Harrison does not avoid the use of a thermostat but that if he does, still, the mere addition of one by Losee would not constitute invention on his part. Plaintiff bases its argument on the fact that the British patent contains a reference to Figure 5—and Figure 5 only—of a prior British patent (No. 13,334 of 1911), which is a drawing of a water heater designed so as to control the water temperature without the use of a thermostat. Defendant points out that the other figures in the prior British patent do show thermostats and contends that plaintiff was charged with this knowledge, either by the reference to the prior patent in 417/14, or by the independent existence of the prior patent itself. Regardless of which of these conflicting views is adopted, it seems clear that defendant must ultimately prevail for, in the light of the decision in Cuno Engineer-

ing Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58, the addition of a thermostat by Losee was not enough in itself to amount to a patentable invention.

Plaintiff insists further that the heating element in Harrison could be exposed and burnt out by boiling off a portion of the water in the tank, and that the tank might even boil dry, whereas neither of these results is possible in Losee. This argument, of course, assumes that the water in the tank will be heated beyond the boiling point, an assumption that seems unjustified in view of the statement in the British patent that the apparatus would be used to heat water through a temperature range of "from cold to say 200° F."

Although the British patent states that it will require only "a small quantity of heat throughout prolonged periods," plaintiff contends that, because there would be a substantial heat loss in the operation of the British heater, it could not function as a dairy heater on a 250 watt circuit. The heat loss to which reference is made would occur, says plaintiff, because the British heater does not use a heat insulating material or a heat break in the inlet and outlet pipes and, further, plaintiff says, this would result in serious heat losses if the Harrison heater were operated under the atmospheric conditions prevailing in a milk house. It urges that certain ex parte tests conducted by Professor Sommer demonstrate this. Defendant discounts the tests because they were conducted with the temperature held constant at 36° F., whereas, according to defendant, the average ambient temperature in the dairy farming regions in the United States is approximately 50° F. Defendant also suggests that plaintiff apparently is not convinced by its own argument, since it uses an all metal outlet pipe on the commercial Losee heater.

Viewing the results of the tests, as well as the various arguments advanced by the parties, in the light most favorable to plaintiff, it seems to me that Losee, by changing the position of the heating element, adding a thermostat, and insulating the inlet and outlet pipes, has produced a heater which is more efficient, more convenient, and more suited to use in a milk-house than is the British heater, and that, though this adds up to improvement and adaptation, it does not constitute invention. Hotchkiss' Ex'x v. Greenwood, 11 How. 248, 52 U.S. 248, 13 L.Ed. 683; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Orr v. Skilsaw, Inc., 7 Cir., 124 F.2d 751. That the patent relied on by defendant to establish the state of the prior art is a British patent does not effect this conclusion. Bone v. Commissioners of Marion County, 251 U.S. 134, 40 S.Ct. 96, 64 L.Ed. 188.

The foregoing includes my findings of fact and conclusions of law upon the issue presented in the reopening.

In view of my findings and conclusions, the complaint is dismissed for want of equity at plaintiff's costs.