**Albert WITTLIN, Plaintiff,**

v.

**REMCO, INC. and Illinois Electric Works, Inc., Defendants.**

**Civ. A. No. 2544.**

United States District Court
E. D. Illinois.
Jan. 5, 1955.

Charles J. Merriam, Chicago, Ill., John B. McCord, Chicago, Ill., Harold G. Baker, Baker, Kagy & Wagner, East St. Louis, Ill., for plaintiff.

Julien Miller and Karl B. Lutz, of Brown Critchlow, Flick & Peckham, Pittsburgh, Pa., Robert Broderick of Pope & Driemeyer, East St. Louis, Ill., for defendants.

PLATT, District Judge.

Plaintiff Albert Wittlin seeks to recover damages from the defendants, Remco, Inc., a corporation, and Illinois Electric Company, a sales agency of Remco, Inc. for patent infringement.

Wittlin filed an application for patent of a "liquid flow indicator" on August 21, 1948. Kenneth R. Newcum, the president of Remco, Inc., filed a similar application ten days later and assigned his interest in the patent to the defendant, Remco, Inc. An interference hearing resulted, and on January 6, 1953 Wittlin

was issued the patent here involved. No. 2,624,308.

The defendant interposed by answer the following defenses: (1) The invalidity of the Wittlin patent by reason of (a) lack of invention and (b) fraud in obtaining the patent; (2) the defendants did not infringe the Wittlin patent.

The defendants also presented a counterclaim alleging in substance that Wittlin obtained his patent in the interference hearing in place of the defendant Remco, Inc., as assignee of Newcum, by the use of false documents and testimony; that as a result thereof Wittlin should account for damages to the defendants for the profits obtained from his patent. Wittlin answered the counterclaim denying the allegations of fraud.

The Wittlin patent is a straight through or free flowing indicator to be used in a closed fluid system to reveal the fluid and the condition of the fluid. One example is cited in the patent using the indicator in a closed or circulating system carrying a liquid refrigerant. The rapidity of the flow, the presence of air or solids, and so forth is observed through a window in the brass cylinder housing a glass tube through which the fluid flows.

 The first proposition presented to this court for determination is whether the plaintiff has a valid patent. A patent is presumed to be valid in a proceeding of this kind. Charles Packat Mfg. Co. v. Jacobs, 7 Cir., 178 F.2d 794; Cover v. Chicago Eye Shield Co., 7 Cir., 111 F.2d 854; Title 35 U.S.C.A. § 282. The burden of establishing invalidity is upon the defendants. Harman v. Scott, D.C., 90 F.Supp. 486, affirmed 6 Cir., 195 F.2d 916; J. D. Wallace & Co. v. Portable Power Tool Corporation, 7 Cir., 51 F.2d 488; Title 35 U.S.C.A. § 282. This presumption of validity may be rebutted by clear proof to the contrary. Nordberg Mfg. Co. v. Woolery Machine Co., 7 Cir., 79 F.2d 685; Ingersoll Steel & Disc. Co. v. Budd Wheel Co., 7 Cir., 67 F.2d 753. The presence or absence of invention necessary to sustain the validity of the Wittlin patent is a question of fact for this court to determine in view of these principles. Faulkner v. Gibbs, 9 Cir., 170 F.2d 34, affirmed 338 U.S. 267, 70 S.Ct. 25, 94 L.Ed. 62; Hall Laboratories v. Economics Laboratory, 8 Cir., 169 F.2d 65; Refrigeration Engineering, Inc., v. York Corporation, Inc., 9 Cir., 168 F.2d 896.

Plaintiff at the trial, in his brief and argument, has limited his claims to numbers 3 and 6 of his patent. Claim 3 is as follows:

"For use in the pipeline of a closed circulatory fluid system to show the rate of flow and the condition of the fluid, a liquid indicator designed to be located in said pipeline and having a straight liquid passage through which all the liquid of the system passes and which is devoid of turns, constructions and obstructions offering resistance to the free flow of liquid through the indicator, said liquid indicator comprising a windowed tubular housing having a pair of outwardly extended shoulders each in connection with an outset end portion defining an enlarged chamber interiorly thereof, a transparent cylinder coaxially positioned within the tubular housing in spaced relation thereto and extending at opposite ends into the enlarged chambers but short of the outer ends thereof forming passages around the ends of the transparent cylinder in said enlarged chambers for the passage of fluid under pressure, a pair of heads interposed in the fluid system in screw threaded connection with an exterior face of the housing, one at each end thereof, a sealing gasket interposed between each end face of the housing and the head proximate thereto adapted, when compressed, to provide a liquid-tight seal between the housing and each head, a pair of resilient gaskets surrounding the cylinder, one adjacent each shoulder of the housing, and a pair of coiled springs one within each of the two housing chambers surrounding the cylinder and each spring in engagement at its inner end with one of the resilient gaskets and at its outer end in engagement with the proximate head to be thereby maintained under compres-

sion for exerting an axial pressure against the resilient gasket to displace the same laterally against the cylinder and partially into the space between the cylinder and the housing to provide a floating mounting for the cylinder, the liquid passing through the indicator being free to pass around the cylinder ends to enter both chambers to exert pressure on the two gaskets to augment the pressure of the springs thereon." Claim 6 differs in that it substitutes "a pair of compression members" for the "pair of coiled springs" mentioned in Claim 3. Plaintiff appears to stand on the spring type indicator.

■ The defendants cite as prior art the patents of Robinson (British 1896),[1] and Patterson (United States 1913).[2] The Robinson patent relates to a transparent glass tube in water gauges for use in steam boilers and other similar vessels where liquid is contained under pressure. Although Robinson's glass cylinder is not encased in a tubular housing, there are "caps" at both ends of the glass gauge. The glass is prevented from touching the "caps", and tight joints are obtained, by the following method: a coil spring inside each cap presses upon a washer which in turn presses on an elastic packing ring made of indiarubber or its equivalent. This pressure, and the pressure of the steam and liquid of the system, thus forces each packing ring, making a tight joint between the caps and the gauge glass, and elastically holding the gauge glass thereby preventing it from receiving any shocks or vibrations from the boiler to which it is attached.

Patterson relates to a vacuum and water connection, providing for a transparent or glass section, covered by means of tubular casting open at its sides, called the "protecting glass holder." Patterson does not use springs, but has compressed washers to tighten the joint between the glass and its holder. Its outward appearance is similar to the Wittlin patent.

Plaintiff's claimed invention, in substance, consists of a floating mounting within a tubular housing for the transparent cylinder, and a liquid tight seal. Both the seal and the floating mounting are obtained by a sealing gasket which is forced into and retained in the narrow space between the cylinder and the housing by a spring and by the liquid pressure of the system.

■ It is manifest that when the sealing arrangement of Robinson is combined with the tubular housing of Patterson every element of the plaintiff's patent is disclosed.[3] The Wittlin patent is not limited to a closed system using only refrigerant. Robinson is " * * * for use on steam boilers and other vessels of like nature wherein liquid is contained under pressure * * *" Patterson " * * * relates to improved vacuum and water connections * * *" All three are straight through fluid indicators to be used for a fluid system under pressure or vacuum. Certainly Robinson and Patterson are more than analogous in the art to Wittlin.[4] However, Wittlin maintains that his indicator is different from the teachings of Patterson-Robinson in that the spring main-

---

1. Foreign patents may be considered as prior art. Bone v. Commissioner of Marion County, 251 U.S. 134, 40 S.Ct. 96, 64 L.Ed. 188.

2. Neither the age of the prior patent, its commercial success, nor its utility will destroy its anticipatory effect. Western States Mach. Co. v. S. S. Hepworth Co., 2 Cir., 147 F.2d 345, certiorari denied 325 U.S. 873, 65 S.Ct. 1414, 89 L.Ed. 1991.

3. The entire prior art may be looked to as a guide for ascertaining novelty. Richmond Screw Anchor Co. v. Umbach, 7

Cir., 173 F.2d 521, certiorari denied 337 U.S. 919, 69 S.Ct. 1161, 93 L.Ed. 1728; Chicago Steel Foundry Co. v. Burnside Steel Foundry Co., 7 Cir., 132 F.2d 812; Gilbert v. Marzall, 87 U.S.App. D.C. 1, 182 F.2d 389.

4. An instrument used for one purpose may be used as prior art for an analogous use if the elements are related and similar. Continental Scale Corporation v. Harrison Wholesale Co., 7 Cir., 132 F.2d 463. Mast, Foos & Co. v. Stover Manufacturing Co., 177 U.S. 485, 20 S.Ct. 708, 44 L.Ed. 856.

tains pressure on the compressing member or washer, thereby holding the resilient gasket in place against the cylinder walls and the glass tube when the system is drained and the pressure is off. Further, that Robinson, does not do this for the reason that the washer which is in front of the spring is limited in its movement forward due to the conical shape of the cylinder wall. An examination of the Robinson patent does not necessarily indicate a disadvantage or difference such as Wittlin claims. The resilient gasket in Robinson, so long as it maintained its resiliency, would be held in place by the spring when the pressure was off if the washer in front of the spring was proportioned so that it would not reach the limit of its forward movement in the brass housing before it compressed the resilient gasket. Granting that there is this small change in the walls of the brass housing of the Wittlin patent so the washer might move forward, I do not consider it such a difference in the "subject matter sought to be patented and the prior art * * * that the subject matter as a whole would [not] have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." [5] It is clear that Wittlin utilizes all the parts, functioning in the same manner, as taught by Robinson and Patterson. Such a device does not merit invention. Benjamin Electric Mfg. Co. v. Bright Light Reflector Co., 7 Cir., 111 F.2d 880, 882; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162.

It being clear that the Wittlin device is not patentable, its commercial success is of no weight. Marconi Wireless Telegraph Co. of America v. United States, 320 U.S. 1, 35, 63 S.Ct. 1393, 87 L.Ed. 1731. It is only in cases of doubtful invention that commercial success is evidence of patentability. Jungersen v. Ostby & Barton Co., 335 U.S. 560, 567, 69 S.Ct. 269, 93 L.Ed. 235; Dow Chemi-

cal Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 330, 65 S.Ct. 647, 89 L. Ed. 973.

Since this court has held that the patent is invalid, there is no need to discuss the fraud issue or infringement. The counterclaim is also based upon fraud in defeating the defendant, Remco, Inc., patent at the interference hearing. The Remco patent is a replica of the Wittlin patent and would be invalid, and therefore the defendant was not deprived of its patent by any fraud, assuming that there was fraud in the interference hearing.

The court therefore finds that neither the plaintiff nor the defendants are entitled to relief.

Findings of Fact, Conclusions of Law, and Final Order may be submitted in accordance herewith.