**Albert WITTLIN, Plaintiff-Appellant,**

v.

**REMCO, Inc., and Illinois Electric Works, Inc., Defendants-Appellees.**

**No. 11425.**

United States Court of Appeals Seventh Circuit.

Nov. 29, 1955.

John Rex Allen, John B. McCord, Chicago, Ill., for plaintiff-appellant.

Karl B. Lutz, Pittsburgh, Pa. (Brown, Critchlow, Flick & Peckham, Julian Miller, Pittsburgh, Pa.; Robert L. Broderick, East St. Louis, Ill., of counsel), for defendants-appellees.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

In plaintiff's suit for infringement of his patent, number 2,624,308, issued January 6, 1953, the trial court sustained a defense of invalidity. D.C., 132 F.Supp. 57. From the judgment dismissing the complaint, plaintiff appeals.

The fact that the published opinion includes a full description of claims 3 and 6 in suit, the nature of the device patented and the details of construction of Wittlin and of that of the prior art enables us to shorten our comments. Suffice it to say, the district court found, on documentary evidence and oral testimony, that Robinson, British, number 4624, issued 1896, and Patterson, number 1,078,552, issued November 11, 1913, anticipated the patent in suit, which was issued without reference by the patent office to either Patterson or Robinson.

The controversy on appeal centers about this finding, plaintiff claiming that Patterson is readily distinguishable, and that the teachings of Robinson are fundamentally different from anything claimed by him. The issue is further narrowed to certain specific details in the respective constructions of Wittlin, Patterson and Robinson. Defendants claim that Robinson discloses the exact sealing means employed by Wittlin, namely, spring-and-fluid-pressed gaskets and that Patterson discloses a straight flow indicator such as plaintiff's. Plaintiff does not seriously deny that Patterson's packing means are like those of Wittlin, but insists that Patterson discloses certain defects, and points to the fact that he provides no springs to help keep in place the resilient packing means which support the glass tube of the indicator. Defendant replies that, inasmuch as Robinson prescribed the use of springs in a similar device, the teach-

ings of the two patentees taught Wittlin everything he disclosed in his application.

Robinson was dealing with improvements in water gauges for use on steam "boilers, etc." He specified that the ends of the transparent tube of the device be sealed against leakage by washers of elastic material such as India rubber or its equivalent, one of which is placed in each of the conical chambers of the contrivance and forced toward the narrow part of these chambers by springs, which impel them into their places, this compression being supplanted later by the pressure from the flowing fluid when the liquid is admitted under pressure into the conducting line and the gauge. This spring he described as a "metallic coiled spring." This element, he said, "partially or wholly" forces the resilient washer into its place, but, when the pressure from the boilers is admitted, the latter supplements or replaces that supplied by the springs. He prevented contact of the glass with other material, thus avoiding the dangers arising from contraction, expansion and choking.

Patterson described his invention as a "new and useful improvement in vacuum and water connections," but specified that it was not limited to water indicators. He provided a glass section to be inserted in a pipeline, through which the flow in the pipe could be seen, making use also of resilient gaskets to support the cylinder in its housing, thus giving the inserted gauge or indicator a "floating" status, as did Robinson and as does Wittlin. However, he employed no springs to maintain pressure against the rubber gaskets, but, rather, obtained his pressure, as the district court found, "by conventional compression washers."

In its formal findings of fact, the trial court found that: "In substance, the invention claimed in Wittlin's patent consists of a tubular housing with opposed windows on its sides and a transparent glass cylinder mounted therein on a floating mounting with a liquid-tight seal. Both the seal and the floating mounting are obtained by a sealing gasket in the narrow tapering space at each end of the glass cylinder between the sides of the cylinder and the inside of the housing. The sealing gasket is forced into and retained in that tapering space by a spring and by the liquid pressure of the system. End fittings threaded in the housing retain the spring in place."

The court found that Patterson shows a similar straight-through sight glass adapted for use in a fluid pipe system under vacuum and pressure conditions, and that: "The tubular housing of Patterson has opposite windows on its sides and is similar in external appearance to the Wittlin indicator. In Patterson, the seal around the side of the sight glass at each end is obtained by a conventional compression washer or gasket held in place by threaded end fittings."

Concerning Robinson, the court said: "The Robinson patent * * * shows a straight-through sight glass in which the ends of the glass tube are sealed to end caps by a packing ring in the tapering space at each end of the glass tube between the sides of the tube and the inside of the end cap. Each packing ring is forced into and retained in that tapering space by a spring and by the liquid pressure of the system, and this packing ring also cushions the glass tube as in the Wittlin patent. End fittings threaded to the end caps retain Robinson's springs in place. The washers G of Robinson do not necessarily prevent his spring-pressed packing rings from operating in exactly the same manner as the spring-pressed gaskets of Wittlin." It found further: "There is no invention in substituting the spring-pressed packing rings of Robinson for the plain sealing gaskets used by Patterson. The Wittlin patent discloses no substantial change over Patterson, as thus modified in view of Robinson, and such minor changes as may be present in Wittlin are lacking in invention."

Further analysis of Robinson and Patterson appears in the trial judge's reported opinion. He concluded that when the sealing area of Robinson was com-

bined with the tubular housing of Patterson, every element of plaintiff's patent was disclosed.

On appeal, plaintiff insists that "the essence of the Wittlin invention is the seal", and that Robinson's seal bears only a superficial resemblance to that of Wittlin. Consequently, the issue here seems to be narrowed to the question of whether the method of sealing, including the springs employed by Wittlin, is disclosed or suggested by Robinson. Plaintiff insists that, after Robinson has, by his spring, forced his gasket into its initial position, then, as soon as the fluid pressure is applied, the spring is no longer effective, but is blocked by the wedge-shaped washer or gasket so that it no longer applies force and that the gasket becomes distorted. In making this argument, plaintiff depends largely on the copper washers of the Robinson patent, claiming that they prevent the springs from performing the same function as do those of the Wittlin patent. Defendants, on the other hand, insist, as the court found, that "the washers G of Robinson do not necessarily prevent his spring-pressed packing rings from operating in exactly the same manner as the spring-pressed gaskets of Wittlin."

The narrow issue presented has necessitated a somewhat careful examination of just what Wittlin claimed on this controversial point. He stated that his spring provides a pressure to compress the gasket; that it presses the gasket down a slanting shoulder to provide a floating mounting for the sight glass and holds the gasket tightly and indefinitely in place, and that, when liquid pressure enters the pipeline and passes through the fitting, it "augments" the pressure of the spring on the gasket, thus tightening the seal. That pressure may be as high as 120 to 140 pounds per square inch. Thus, plaintiff contends that Wittlin provides compression springs bearing against the gasket "at all times" to compensate for cold flow and permanent set. Plaintiff further insists that the springs follow up the movement of the gaskets and compensate au-tomatically for cold flow and distortion of the gasket resulting from long use, and that neither Robinson nor Patterson suggest this concept. Scrutiny of Wittlin's patent, however, does not disclose any assertion by him of this theory of so-called compensation. It seems to us, upon careful analysis of his patent, that it reflects a concept that the spring will hold the gasket in place when there is no liquid pressure in the line, and that, when fluid pressure appears, the compression function of the spring will be relieved or aided by the pressure of the flowing fluid. We think this is within the teaching of Robinson. His springs compress the rubber gaskets and hold them in place, and, in his device, as in the patent in suit, after the liquid is admitted to the indicator, the construction is such that the fluid pressure likewise takes over as in Wittlin, and presses the gaskets against the seats, thus augmenting or perhaps entirely replacing the force of the springs. Wittlin discarded the copper washer of Robinson, which, the district court said, "does not necessarily prevent his spring-pressed packing rings from operating in exactly the same manner as the spring-pressed gaskets of Wittlin." It seems to us that the adoption of Wittlin of a specific mechanical set-up in this respect slightly different from that of Robinson does not amount to invention over Robinson, who utilized a similar mechanical contrivance, even though the details of the two delvers in the art differ somewhat. In effect, we think the springs and gaskets of Robinson were sufficient to suggest to Wittlin his method of cushioning his cylinders on resilient material, compressing that resilient material by springs to prevent leakage, and reinforcing, augmenting or replacing the pressure accomplished by the springs by the flow of the liquid into and through the pipeline and the indicator.

Wittlin was not a pioneer. He had before him the floating glass cylinder indicator of Patterson. He had also that of Robinson, including the latter's suggestion of springs to assure that the

gaskets of resilient material be kept in place so as to prevent leaks or contacts of the glass with metal. As we have said, Robinson and Patterson may not have demonstrated everything that Wittlin accomplished, but, with the two patents before him, it seems to us that he accomplished nothing more than the achievement of a worker skilled in the art. Thus, a practical expert on refrigeration testified: "There is no special skill required. All one need to have would be ordinary shop tools and a fair knowledge of mechanics to duplicate the features shown on this patent [Robinson] and applying them to the Patterson design." Even if Patterson and Robinson do not completely anticipate, their teachings disclose a state of the art, such that plaintiff, delving therein, was so instructed that what he did amounted to mere mechanical skill.

We think the findings of fact are amply sustained by the evidence and that the court's analysis was proper. The judgment is

Affirmed.