DITTO, INCORPORATED, Appellant,

v.

MINNESOTA MINING & MANUFAC-
TURING COMPANY, Appellee.

MINNESOTA MINING & MANUFAC-
TURING COMPANY, Appellant,

v.

DITTO, INCORPORATED, Appellee.

Nos. 17415, 17419.

United States Court of Appeals
Eighth Circuit.

Aug. 28, 1964.

Edward A. Haight, of Haight, Simmons & Hofeldt, Chicago, Ill., John W. Hofeldt, of Haight, Simmons & Hofeldt, Chicago, Ill., and William H. Abbott, of Carpenter, Abbott, Coulter & Kinney, St. Paul, Minn., for Minnesota Mining & Manufacturing Co.

James P. Hume, of Byron, Hume, Groen & Clement, Chicago, Ill., James M. Wetzel, of Byron, Hume, Groen & Clement, Chicago, Ill., and Paul J. McGough, Minneapolis, Minn., for Ditto, Inc.

Before VAN OOSTERHOUT, RIDGE and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Plaintiff Minnesota Mining & Manufacturing Company (3M) brought this action for infringement of United States Letters Patent No. 2,740,896 entitled "Method of Using Heat Sensitive Copying Paper" granted 3M upon application of inventor Miller on April 3, 1956, against defendant Ditto, Incorporated. Ditto by answer denied infringement and asserted the invalidity of the patent and by counterclaim sought a declaratory judgment determining the patent to be invalid and void and not infringed. Jurisdiction exists under the patent laws of the United States, 35 U.S.C.A. §§ 271 and 281, and 28 U.S.C.A. § 1338.

Validity and infringement of the patent above described, which like the parties we will refer to as the Miller patent, are the basic issues presented by this litigation.

On March 16, 1962, after trial to the court on the merits, the court filed a memorandum opinion, reported at 203 F. Supp. 950, finding the patent invalid. Judgment in accordance therewith was entered on July 12, 1962, and detailed supporting findings of fact and conclusions of law were filed on July 17, 1962. Since the court determined the patent to be invalid, the infringement issue was not reached.

3M filed a timely motion for new trial based upon alleged errors and newly discovered evidence, pursuant to Fed.R.Civ. P. 52(b) and 59. After affording a full hearing, the trial court on November 2, 1962, filed an order granting a new trial and vacated its prior memorandum decision, findings of fact and conclusions of law and judgment entered thereon.

Thereafter, a new trial was held. Additional evidence was introduced. On April 17, 1963, memorandum opinion reported at 221 F.Supp. 980 was filed. On June 10, 1963, the court filed detailed findings of fact and conclusions of law and judgment entry dismissing the complaint upon the ground of no infringement. On Ditto's counterclaim, the court declared the Miller patent to be valid and further determined that the patent was not infringed by any products made, sold or used by any methods practiced by Ditto.

Each party has taken a timely appeal from such judgment. 3M's appeal is from all parts of the judgment determining its patent is not infringed. Ditto's appeal is from that portion of the judgment reading "On the counterclaim, United States Letters Patent No. 2,740,-896 is declared valid in law."

This case at all its stages has been well tried by the parties before Judge Nordbye, a very able and experienced judge. Each party introduced considerable expert testimony, much of which is conflicting. Many experiments and demonstrations bearing upon the issues were conducted and explained by experts in the

presence of the trial court. The comments and questions propounded by Judge Nordbye and his extensive and carefully considered memorandum opinions reflect that he closely followed the evidence and gave full and fair consideration to all of its aspects.

The reported opinions of the trial court adequately and fairly set out the factual background including the terms of the patent claims and description of the Miller method, a description of the accused method and a description and analysis of the prior art. A detailed discussion of such matters and the extensive conflicting testimony and exhibits, which are sufficiently set forth in the reported opinions, would serve no purpose and extend this opinion beyond reasonable bounds.

The Miller patent describes and claims a process for rapidly making copies of graphic originals such as letters, printed documents and diagrams. It is utilized by 3M in its Thermo-Fax machine which has attained wide commercial success. The making of copies is accomplished by placing the graphic original in close contact with heat sensitive paper and then by an intense and brief application of radiant heat creating a heat differential pattern whereby the characters of the original absorb the radiation and conduct the heat to the heat sensitive paper. The patent covers the process only. As stated by the trial court, "Neither the heat-sensitive paper nor the machine is involved in this suit; that is, it is the process reflected in the patent for making copies of a graphic original which is the subject of the patent in suit." 203 F.Supp. 950, 951.

■■ There can be no infringement if the Miller patent is invalid. John Deere Co. v. Graham, 8 Cir., 333 F.2d 529, and cases there cited. The validity question is of greater public importance than the infringement issue and it is usually the better practice to first consider the validity issue. Parmelee Pharmaceutical Co. v. Zink, 8 Cir., 285 F.2d 465, 467. We shall follow such practice here.

■ Fact-findings of the trial court in patent cases are to be tested by the clearly erroneous standard prescribed by Rule 52(a). In Rota-Carb Corp. v. Frye Mfg. Co., 8 Cir., 313 F.2d 443, 444, this court speaking through Judge Sanborn sets out the applicable test as follows:

"The question whether an improvement involves mere mechanical skill or involves the exercise of the faculty of invention is, if at all doubtful, a question of fact, and a finding either way upon that question by a trial court is conclusive on appeal unless clearly erroneous. (Citations omitted.)

"When a trial court in a patent case has followed proper legal standards in determining the question of the presence or absence of patentable invention, its finding upon that issue, if sustained by the evidence, will not be disturbed on appeal."

■ The standards for determining validity with supporting authorities are set forth and discussed by Judge Matthes in John Deere Co. v. Graham, supra. As there pointed out, a statutory presumption of validity exists and the burden is on the party asserting invalidity of the patent. Such presumption is rebuttable. The more recent opinions of the Supreme Court and of this court reflect that standards of originality necessary to sustain a patent based, as it is here, upon a combination of old elements, have been raised and that such patents have frequently met with little success when their validity has been attacked. It is recognized that the public has a substantial interest in all patent litigation and is entitled to protection against monopolization of that which is not lawfully patentable.

Ditto's invalidity defense is based primarily upon its contention that the patent in suit is described and anticipated in printed publications made more than one year prior to the patent application. 35 U.S.C.A. § 102(b) makes such publication a basis for establishing invalidity of a patent. Ditto relies principally upon articles published in "The Photographic

News" in 1859 relating to disclosures by M. Niepce De St. Victor and articles by Robert Hunt in "The London, Edinburgh, and Dublin Philosophical Magazine and Journal of Science" in 1840. · Ditto contends that such articles disclose the process claimed by the Miller patent. Such articles are adequately discussed and analyzed in the trial court's opinion.

■ It is undisputed that such articles were published more than one year prior to the patent application. It is likewise agreed that if the Miller process was described in such publications, patentable novelty or originality cannot be asserted for it. Prior publications rest upon the same ground as prior patents so far as anticipation is concerned. Bone v. Marion County, 251 U.S. 134, 144, 40 S.Ct. 96, 64 L.Ed. 188; Midland Flour Milling Co. v. Bobbitt, 8 Cir., 70 F.2d 416, 417. The prime controversy here is whether the publications disclose the Miller process.

Ditto's contention that the court erred in asserting as a part of the test of anticipation the requirement that the author of the prior printed publication not only teach how to practice the invention but display an understanding of the theory of its operation is without merit. The trial court recognizes the principle urged at p. 956 of 203 F.Supp. and cites and follows Smith v. Hall, 301 U.S. 216, 226, 57 S.Ct. 711, 81 L.Ed. 1049, and DeForest Radio Co. v. General Elec., 283 U.S. 664, 686, 51 S.Ct. 563, 75 L.Ed. 1339, quoting from the last cited case as follows:

" 'Whether DeForest knew the scientific explanation of it is unimportant, since he did know and use the device and employed the methods, which produced the desired results, and which are the device and methods of the patent.' "

Here, unlike the situation in DeForest, it cannot be said with certainty that St. Victor's teaching pointed to the method of obtaining the Miller process result.

There is nothing in the court's second opinion to indicate any departure from the principles above set out. Rather, the court was persuaded by the expert testimony and the scientific experiments conducted before it, based upon St. Victor's teaching, that St. Victor's process was primarily a chemical process dependent on chemical reactions caused on the sensitive paper by greasy ink and not caused by non-greasy ink; that the St. Victor result was obtained by chemical action of the ink on the sensitive paper. The court was further persuaded by the evidence that the temperatures obtained by the heating device used by St. Victor could not possibly cause sufficient radiant heat to create the heat differential essential to the Miller process and that such heat differential was also unattainable by reason of the long St. Victor exposure. The court in concluding his treatment on the validity issue states:

"Obviously, the Court has completely reversed his thinking and conclusions as to the relationship between Niepce and the Miller patent. The Court's only response thereto is that, after further reflection and after hearing considerably more evidence on the entire subject, the views expressed herein reflect a more sound and a more realistic approach to the problem presented with respect to the validity of the Miller patent. And if able and distinguished scientists in this particular field cannot agree as to the teachings of Niepce and the relationship, if any, between the art as taught by Niepce and the art as developed in the Miller patent, it may be understandable that the Court has vacillated in its attempt to determine which of the litigants has brought forth the most convincing analysis and interpretation of a rather vexing problem." 221 F.Supp. 980, 985.

■ Ditto places considerable reliance upon a decision of the West German Federal Patent Court filed November 29, 1962, made a part of the record here, which held the German counterpart of the patent here involved invalid as a combination of known individual features

to which combination no inventive genius can be ascribed. In reaching such result, the German court considered the prior art as disclosed by the same St. Victor publications here involved, and determined that St. Victor teaches the Miller patent process to one skilled in the art. While such opinion appears to be well reasoned, it is not controlling authority. Like the trial court in our present case, the German court recognizes that there is a lack of clarity in St. Victor's teaching. Moreover, the German law may well apply different standards from those controlling here and in all probability some difference exists in the expert testimony used in the cases.

With respect to the prior art, the court's findings are:

"48. None of the prior art patents or publications suggests or discloses the process of the Miller patent in suit. No one of the prior art references teaches or suggests the use of brief and intense radiation in a process to produce copies of papers and documents.

"49. None of the prior art anticipates the invention of the Miller patent in suit.

"50. The process of the Miller patent was not obvious to those skilled in the art at the time it was invented by Miller."

Such findings are supported by substantial evidence. While upon this record a contrary result could be reached, we cannot say the findings made are clearly erroneous. We cannot substitute our judgment for that of the trial court upon disputed fact issues. The trial court had the benefit of seeing and hearing the witnesses and viewing the pertinent experiments made before it. The court's fact-findings support the judgment determining the patent to be valid.

The trial court's judgment dismissing the infringement claim is entitled to be affirmed upon the basis of the trial court's opinion. The Rule 52(a) clearly erroneous standard also applies to the fact-findings upon the infringement issue. 3M has failed to demonstrate that the court's decision was induced by any erroneous view of the law. In Parmelee Pharmaceutical Co., supra, we set out certain well-established rules with respect to the reach of the patent, stating that "resort must be had in the first instance to the words of the claim" and "that which is not literally within the claims does not infringe." 285 F.2d 465, 469.

In our present case, the trial court states: "There must be true identity between the patent claims and the procedure followed by the defendant in the utilization of the Ditto machine in producing copies of graphic material in order to support plaintiff's claims of infringement." 221 F.Supp. 980, 985.

The court carefully considers all the evidence, including what he describes as the tortuous route Miller was required to travel before his patent was allowed. The court examined the file wrapper as an aid in interpreting Miller's claim but did not apply technical file wrapper estoppel. Upon the basis of substantial evidence, the court determined the Miller claims teach the use of heat sensitive paper which upon exposure undergoes a visible color change. Ditto's process uses a carbon sheet and a copy sheet. The heat of the original is conveyed to the carbon sheet, whereby wax and ink upon melting are by pressure imposed upon the copy sheet and when such sheets are separated, wax impressions of the original characters appear upon the copy. The court determined that differences in the two processes are readily evident and that defendant's copy sheets did not equate with Miller's teaching.

The doctrine of equivalents here urged by 3M is very thoroughly discussed and well set out by Judge Blackmun in Parmelee Pharmaceutical Co., supra. Consideration must be given to the fact that the various elements of 3M's combination process patent have well-established and well-understood functions. No patent infringement is here claimed with respect to 3M's heat sensitive paper. Chemically treated heat sensitive paper was known

to the prior art. The principal advancement in the art taught by the Miller process over St. Victor is the more intense heat and brief exposure. The discovery of the ultra red lamps of the type here used greatly facilitated this development.

Equivalency is an equitable consideration. As stated in Parmelee at p. 472 of 285 F.2d, "a finding of equivalence is a finding of fact and a trial court's decision on the issue is not to be disturbed unless clearly erroneous."

Upon this issue, the trial court states: "The doctrine of equivalency would be extended beyond reasonable limits if defendant's method of reproducing graphic originals is held to infringe the teachings of plaintiff's patent." 221 F.Supp. 980, 989.

3M has failed to demonstrate that the court's finding that the Miller patent is not infringed is clearly erroneous.

Our consideration of 3M's appeal and Ditto's appeal leads us to the conclusion that the judgment appealed from should in all respects be affirmed.