**WOOD CONVERSION COMPANY,**
Plaintiff,

v.

**ARMSTRONG CORK COMPANY,**
Defendant.

No. 4–63 Civil 55.

United States District Court
D. Minnesota,
Fourth Division.
June 29, 1967.

William D. Lucas and Berj A. Terzian, of Eyre, Mann & Lucas, New York City, Gunnar A. Gustafson, Jr., and David C. Forsberg, of Briggs & Morgan, St. Paul, Minn., for plaintiff.

Armin M. Johnson, of Faegre & Benson, Minneapolis, Minn., Dexter N. Shaw and Gordon S. Rogers, of Howson & Howson, Philadelphia, Pa., and George L. Herr, Lancaster, Pa., for defendant.

## MEMORANDUM DECISION

NORDBYE, District Judge.

This proceeding is a declaratory judgment action brought by the plaintiff against the defendant to have United States Letters Patent D–188,491 for the design of a "Ceiling Tile Or The Like" declared invalid and not infringed. The defendant is the owner of the patent in suit and has counterclaimed to have the patent declared valid and infringed by the plaintiff.

Plaintiff is a corporation of the State of Delaware with its principal place of business in St. Paul, Minnesota. Defendant is a Pennsylvania corporation with its principal place of business at Lancaster, Pennsylvania, but licensed to do business and doing business in the State of Minnesota. Jurisdiction of the parties and the subject matter is not disputed.

One Robert F. Green was the applicant for the patent in suit. Defendant is the assignee. The application was filed May 14, 1958, and was granted August 2, 1960. The patent hereafter will be referred to as the Green patent. The patented tile design employs a random arrangement of two different sized punched holes in a ceiling tile. There is a clustering of the larger holes and in the spaces between these clusters there are smaller holes, the larger holes and the smaller holes being bunched together so as to produce a swirl or lace-like effect in an amorphous design. That the design is pleasing to the eye may be conceded. However, Green was not a pioneer in the designing of acoustical tile with punched holes. A patent had been issued to one Prisland on February 3, 1953, and was later assigned to the Celotex Corporation. This tile depicted a two-hole acoustical correction design. Before Green, there was on the market the straight or regular drilled holed tile with the same sized holes used in a geometrical design. Then there was the so-called Skip-A-Hole design, where larger and smaller holes were used in a manner to break the harshness of the straight-holed tile. In early 1950, the plaintiff had on the market a tile with two different sized holes intermixed on the face of the tile (Plaintiff's Exhibit 213). In addition, Armstrong had its Minatone, a mineral tile, and its Cushiontone, a fiber tile. The prints of the latter two tiles were before the Patent Office when the Green patent application was being considered. The patent examiner first rejected the Green claim in that, in his opinion, it was lacking in invention, and later signed an order in which he allegedly finally rejected the application by reason of Prisland and the two Armstrong products known as the Minatone and Cushiontone tiles, and stated at that time,

" * * * The slight differences thereover are deemed to involve minor variations rather than being a distinctively new and different design. It is well settled that obvious changes in arrangement and proportioning may be made without the exercise of the inventive faculty."

It was only after the alleged phenomenal success in the sale of the new tile called Classic made under the Green patent as evidence of public acceptance that the patent was finally granted to Green. And although prints of the Armstrong Minatone and Cushiontone tile were before the patent examiner as depicted in a publication known as Sweet's Architectural File Catalogue, the Patent Office during the consideration of the Green application never was informed by Green or Armstrong, or anyone else, of Armstrong's Custom Lay-in Board, a two foot by four foot punched panel which had been on the market long before the Green application. This fiber panel marked as Defendant's Exhibit 104 and by a twelve inch by twelve inch reproduction thereof as shown in Plaintiff's Exhibit 269 consists of a one-size punched hole design in the tile in a heterogeneous manner which has a strong eye appeal and was more appealing than the geometric regularity of some of the acoustical tile which was found on the market. While it may be recognized that the Classic tile of the Green patent gives a more flowing effect with the smaller holes filling in the voids

than the Custom Lay-in Board, the patent examiner recognized that it would not be invention to merely add smaller holes to a tile which had larger holes in view of the prior art. Green merely added smaller holes to the Custom Lay-in Board design so as to provide a more flowing appearance upon close inspection —not, however, when put in place in a ceiling.

■■■ True, the witness Hauser, called by the defendant, took the design as depicted in Plaintiff's Exhibit 269 and put in smaller holes, producing Defendant's Exhibit 422, and thereby did not produce a design that had the attractive over-all appearance as shown in the Classic tile. But Hauser merely put in holes only slightly smaller than Minaboard holes without any attempt to create a design. Small holes in the voids in Plaintiff's Exhibit 269 would produce a tile strikingly similar to the Classic tile. However, without any smaller holes added, by placing Plaintiff's Exhibit 269 in a ceiling alongside the Classic tile, it is very evident that the average person would not be able to detect any difference between the two designs. A person reasonably skilled in the art could take the tile design in Plaintiff's Exhibit 269 and with the purpose of adding to its eye appeal to a purchaser who might closely examine it, and without any inventive skill, create a design that would accomplish everything which Green did. That is, to create some sort of a design for tiles does not necessarily require inventive skill. Any arrangement of elements which results in the same general impression of over-all appearance as disclosed in the prior art does not constitute invention. And this view is fully consonant with the pronouncement of this Circuit in American Infra-Red Radiant Co. v. Lambert Industries, Inc., 1966, 8 Cir., 360 F.2d 977, 987,

"We have held in the past and we continue to hold that 'invention will not be decided on the narrow issue of degree', and that the mere changing of form, proportions, or size will not alone constitute 'invention.' Swenson v. Boos, 156 F.2d 338 (8 Cir. 1946). This is true even though the change brought about better results. Midland Flour Milling Co. v. Bobbitt, 70 F.2d 416 (8 Cir. 1934). Society has an interest to protect in patent litigation and its interests demand that the complete protection afforded by a patent not be allowed for petty, insignificant, and obvious advances. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58 (1941); Ditto, Incorporated v. Minnesota Mining & Manufacturing Co., 336 F.2d 67 (8 Cir. 1964)."

Among the prior art in designs that could be easily adapted for tile by manufacturers, reference may be made to Armstrong's linoleum which was on the market long before the Green patent was applied for and which was not before the Patent Office. In this linoleum there are depicted two or more different sizes of small elements in a random arrangement with clustering of the different elements as disclosed in Plaintiff's composite Exhibit 276. This linoleum design bears a marked resemblance to Armstrong's Classic tile.

Plaintiff's position herein that that which Green accomplished was not invention in view of the prior art is strongly fortified by the advances being made by others in the industry in attempting to capture eye appeal in the acoustical tile market. Admittedly, the arrangement of the holes in the Green tile had no effect on its acoustical properties. But acceptance by consumers apparently was determined by the comparison of various tile within eye-reading distance notwithstanding that the lacy and amorphous swirl-like effect in the Classic design would be entirely lost in the ceiling and give the same impression as many of the standard tile designs which had long been on the market. The advancements in design being made by those with ordinary skill in the art contemporaneously with Green are impressively demonstrated by the designs of Mr. Laughlin, employed by the plaintiff company, and who months prior to Green's applica-

tion was making and producing tile designs which bear a striking resemblance to the Classic design. Mr. Laughlin's designs never were adopted by the plaintiff for the market. But his work and production is convincing evidence of what may be produced in light of the prior art by those who have ordinary skill in the art. It is true that when the Classic design first was marketed, plaintiff may have recognized the artistry of that which Green had produced, and thereafter in seeking to outdo the Classic design went forward with a four-hole design for tile produced by Mr. Brody and Mr. Rahr and later called the Constellation, which is the alleged infringing tile in this litigation. But plaintiff's attempt to excel the customer acceptance of the Classic tile design in endeavoring to create a tile which would have a greater customer appeal does not, in light of the prior art, add to or support the inadequate basis for the granting of the Green patent. And it may be stated that although plaintiff did not market any of the early designs it had created before the Classic design was on the market, there was no secrecy in plaintiff's operation in that regard and it intended in good faith to manufacture one or more of these experimental tile designs before Armstrong came out with Classic.

It may be noted that Green makes no limitation in his patent application as to the size of the holes in the title to be manufactured in accordance with the teachings of his patent. Consequently, although the Classic design which has an arrangement and size of holes allegedly in conformance with the patent drawing, other tile with larger holes likewise allegedly made in accordance with the teachings of the patent are harsh and the alleged lacy swirling design is completely absent. Moreover, there is no accuracy in the Classic tile designs as to the location of the holes; that is, as to the location of the number of the smaller and larger holes. This is evident from Defendant's Exhibits 399, 400 and 401 and Plaintiff's Exhibit 258.

And in passing it may be noted that when Mr. Brody and Mr. Rahr applied for a patent on the plaintiff's Constellation tile for Wood Conversion, which application was co-pending with the Green application, the examiner withdrew the Green patent drawing as a reference and denied the patent to Mr. Brody and Mr. Rahr on a Classic design tile based on the Green patent. Certainly, if the Classic tile is sufficient prior art to deny a patent for the Constellation design, then Armstrong's Custom Lay-in Minaboard is ample prior art to deny a patent for the Classic design.

Defendant emphasized before the patent examiner and before this Court the alleged commercial success with the Classic tile. When this tile was put on the market, it was the first punched-hole design tile other than the lay-in Minaboard and was a departure from the geometrical skip-a-hole or random designs which had been available to the public. Consequently, Classic tile did have a burst of customer appeal that caused initial heavy buying by the public. However, the public enthusiasm for Classic did not last very long and a decline in buying probably was due to the fact that after Classic had been placed in a ceiling, the so-called lacy design lost its effect to the viewer, and it was not long before other tile exceeded the sale of Classic. However, the Court does not find that reference made to the Patent Office by Armstrong as to the commercial success of Classic was made in bad faith or in fraud.

The Court adopts the foregoing as its Findings of Fact, and as Conclusions of Law finds that the patent in suit is invalid in view of the prior art and is lacking in invention. Consequently, it is not necessary for the Court to pass upon the question as to whether or not there is an infringement of the Green patent by plaintiff's Constellation design. An invalid patent cannot be infringed.

The request of the plaintiff for an allowance of attorneys' fees will not be granted.

An order for judgment will be entered herein in accordance with the above. Exceptions are reserved.