**Harold J. WEBER, Plaintiff,**

v.

**FORD MOTOR CO., Volkswagen of America, Inc., Defendants.**

Civ. A. No. 83–3292–Y.

United States District Court,
D. Massachusetts.

Jan. 16, 1987.

Harold J. Weber, pro se.

Peter Manus, Robert J. Horn, Jr., Kenway & Jenney, Boston, Mass., James Wamsley, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendants.

### MEMORANDUM OF DECISION

YOUNG, District Judge.

Inventor Harold J. Weber ("Weber") initiated and maintained this action *pro se* alleging that Ford Motor Co. ("Ford") and Volkswagen of America, Inc. ("Volkswagen") have been and are infringing his United States Patent No. 4,150,497 ("the Weber patent") which describes a "Manual Gearshift and Clutch Training Apparatus Including Sensory Indication For Most Favorable Operator Control." Both Ford and Volkswagen deny infringement and Volkswagen has counterclaimed, seeking a declaration that, even if its system infringes the

Weber patent, that patent is invalid and unenforceable. Unlike some litigation broüght *pro se* against large corporations, the present dispute has proceeded to resolution without personal rancor, attended by a professional concern on the part of all parties to address genuine issues. Thus, there is but a single claim of the patent—Claim 13—which is at issue here. This reflects credit on counsel and the several litigants; indeed, Mr. Weber has demonstrated that it remains possible for a lone individual to properly conduct rather complex litigation.

In the late 1960's, Weber purchased a 1968 American Motors Corporation Rambler as a family car. The Rambler had a standard, manual transmission and Weber became aware that his wife was experiencing difficulty in keeping the car in the proper gear for maximum fuel economy or road performance. An engineer and a ham radio operator, it occurred to Weber that he might create a device which would indicate to a driver when he or she ought shift into an higher or lower gear and would, as well, warn the driver when he was partially disengaging or "riding" the clutch. Weber set up an electrical circuit designed, in his mind, to accomplish these goals but he never got around to installing it in a motor vehicle and, in 1970, he purchased two cars for his family, both with automatic transmissions. The problem not seeming so acute to him, he moved into other areas. In 1976, however, Weber purchased an American Motors Corporation Pacer with a standard, manual transmission. Again, his wife had trouble upshifting and downshifting and continued to ride the clutch. These problems caused Weber to design the first practical application of his concept. As implemented by Weber, the device consisted of electronic circuitry which sensed the proper point at which the engine ought be shifted into the next higher gear or, conversely, ought be shifted from top gear into the next lower gear. Weber's device was adjustable so that the point at which upshift or downshift would be indicated could be set so as to maximize fuel economy, engine performance, or a combination of the two. At the point at which an upshift was indicated, a digital display would switch from the gear in which operation was then being conducted into the next higher gear number and a distinctive signal would sound. Conversely, when downshifting was in order, the digital display would so indicate numerically and another sound, distinctive to downshifting, would be emitted. A third signal would give warning that the operator was riding the clutch. Weber thereafter sold the car in which he had placed his gear shift indication device.

Believing that his concept had general application, Weber wrote out his own patent application and filed it on March 4, 1977. After appropriate review and examination, the Weber patent—Weber's seventh patent—issued on April 24, 1979.

In this action, Weber alleges that the upshift indicator system currently in use in Ford Escort automobiles and in Ford (Mercury Division) Lynx automobiles infringes his patent. That device, however, has its roots in an entirely different technical problem, the upshift indicator being simply an added dividend to the solution of other technical concerns.

Ford's device stems from a concern with fuel conservation. It was originally designed to adjust the throttle plate in the carborator of a Ford truck. The device senses engine r.p.m. and actuates a solenoid when the r.p.m. exceeds a predetermined level. In 1982, Ford used this same system in certain of its automobiles to control fuel flow during deceleration. Like the original truck application, that system also senses engine r.p.m. and actuates a solenoid when the r.p.m. exceeds 1800. In 1983, Ford used the r.p.m. sensor to actuate a light on the dashboard when the r.p.m. exceeds 1800. The light is a signal to the operator that it is time to upshift the transmission. The Ford system also includes a vacuum switch that opens the circuit and prevents actuation of the light when the engine is under heavy load and upshifting is not indicating even though engine r.p.m. is in excess of 1800. Finally, the Ford system includes a top gear switch which opens the circuit when the gear shift has been placed in top gear, thus disabling

the upshift light, regardless of engine speed, when the transmission is in top gear and can no longer be upshifted. There is no signal in the Ford system to indicate that the operator should downshift the transmission.

Similarly, the allegedly infringing Volkswagen system is solely concerned with achieving fuel economy, even at the expense of driving performance. The Volkswagen upshift indicator is a single upshift light in the shape of an upward pointing arrow on the dashboard, which illuminates whenever the same performance demanded by a driver is available in the next highest gear, provided there is a higher gear to shift to. Volkswagen has studied the upshift points used by the United States Environmental Protection Agency in its tests establishing EPA mileage ratings. Volkswagen has noted that the upshift points normally used in the EPA tests reflect those used by the average driver interested in automobile performance; i.e. they come at an higher r.p.m. than would achieve optimum fuel economy. Volkswagen has determined that, if a driver follows the upshift indicator it provides, the result will be fuel savings and a markedly improved EPA mileage rating. Volkswagen uses these ratings to its advantage in marketing. The Volkswagen system senses three engine parameters, i.e. engine speed expressed in r.p.m., full release of the accelerator pedal, and whether the driver is demanding "high power" performance by nearly full depression of the accelerator pedal. Like the Weber and Ford systems, the Volkswagen system is disabled if the highest gear of the transmission is engaged. In the case of Volkswagen gasoline systems used with carborator engines, the system is also disabled when the coolant temperature is below approximately seventy degrees centigrade to avoid upshifting before the engine has warmed up. In contradistinction both to the Weber and the Ford systems, the Volkswagen system senses engine r.p.m. from a pressure switch which operates from the ported manifold vacuum. Like the Ford system, but unlike the Weber system, Volkswagen provides no indication concerning when an operator ought downshift.

The differences between the Weber system and either the Ford or the Volkswagen systems are significant and immediately manifest. The Weber system senses three engine parameters: r.p.m., accelerator position, and clutch position. The Ford system senses only r.p.m. and the Volkswagen system a combination of r.p.m. and accelerator pedal position at its two extremes, i.e. fully released and nearly fully depressed or "floored." The Weber patent, it will be remembered, senses accelerator position not only at its two extremes but throughout its travel range. Neither the Ford nor the Volkswagen systems sense clutch position at all; neither provide any indication concerning downshifting; and neither are concerned with riding the clutch, a condition which the Weber patent expressly warns the driver against. Unlike the Ford and Volkswagen systems, the more complicated Weber patent may be adjusted so as to maximize driving performance at the expense of fuel economy. The mass produced Ford and Volkswagen systems concern themselves with fuel economy alone, even—in the case of the Volkswagen system—at the expense of driving performance. Significant also is the fact that if one idled a Volkswagen, Ford Escort, or Mercury Lynx and then "floored it," never taking one's foot off the accelerator pedal, neither the Volkswagen nor Ford upshift indicator lights would ever engage. Only the more complex Weber device would signal to the operator (both visually and aurally) that he must necessarily upshift. The Ford and Volkswagen operators would simply burn out the transmission. In short, as Weber himself testified, "My device goes well beyond theirs."

▪ Upon these findings, the Court cannot conclude that either the Ford or the Volkswagen device infringed the Weber patent. Claim 13, the only claim sued upon in this case, is a claim for a combination of elements.

In such a claim, if the patentee specifies any element as entering into the combination, either directly by the language of

the claim, or by such a reference to the descriptive part of the specification as carries such element into the claim, he makes such element material to the combination, and the court cannot declare it to be immaterial. It is his province to make his own claim and his privilege to restrict it. If it be a claim to a combination, and be restricted to specified elements, all must be regarded as material, leaving open only the question whether an omitted part is supplied by an equivalent device or instrumentality.

*Fay v. Cordesman,* 109 U.S. 408, 420–21, 3 S.Ct. 236, 244, 27 L.Ed. 979 (1883); *American Hoist & Derrick Co. v. Manitowoc Co.,* 603 F.2d 629, 630 (7th Cir.1979) ("[t]o find infringement, the [c]ourt must determine that every element of a claim alleged to be infringed must be found in the accused device"); *Amstar Corp. v. Envirotech Corp.,* 730 F.2d 1476, 1484 (Fed.Cir.) ("[It is a] long-established legal principle that non-infringement is shown when an element or step in the claims is missing from the accused product or process...."), *cert. denied,* 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 240 (1984); *C S & M, Inc. v. Covington Brothers Technology,* 208 U.S.P.Q. 329 (C.D.Cal.1979), *aff'd,* 678 F.2d 118 (9th Cir.1982). One need go no further than to note the absence of any device to sense clutch pedal position, to indicate down shift points, or to provide against clutch riding, to conclude that there is no infringement shown here.

Nor does the doctrine of equivalence save Weber's case.

The doctrine of equivalence permits a finding of infringement, despite the absence of a literal identity between a claimed device and the elements of an alleged infringing device, where the "two alleged devices do the same work in substantially the same way, and accomplish substantially the same result." *Graver Tank & Manufacturing Co. v. Linde Air Products Co.,* 339 U.S. 605, 608 [70 S.Ct. 854, 856, 94 L.Ed. 1097] (1950), *quoting Machine Co. v. Murphy,* 97 U.S. [7 Otto] 120, 125 [24 L.Ed. 935] (1877).

*Nestier Corp. v. Menasha Corp.,* 739 F.2d 1576, 1579 (Fed.Cir.1984), *cert. denied,* 470 U.S. 1053, 105 S.Ct. 1756, 84 L.Ed.2d 819 (1985). Here the Ford and Volkswagen devices do somewhat the same work as that accomplished by the Weber device, albeit they are a pale reflection of it, but they work through significantly different approaches to accomplish related but distinct ends. There is no equivalence here and no infringement on the part of Ford and Volkswagen.

■ There remains the issue of the validity of the Weber patent itself. Since the issue of infringement has been resolved against Weber, it might appear that it is unnecessary to resolve the issue of the validity of the Weber patent. "[T]he better practice, [however,] is to treat both the validity and infringement issues, *Sinclair Co. v. Interchemical Corp.,* 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945), particularly in view of the public interest in the validity issue[,] *Ditto, Inc. v. Minnesota Mining and Manufacturing Co.,* 336 F.2d 67 (8th Cir.1964)...." *Leesona Corp. v. United States,* 530 F.2d 896, 906 n. 9 (Ct. Cl.1976), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). Though where, as here, non-infringement is clear and invalidity is not plainly evident, it would be appropriate to treat only the infringement issue, *Lockwood v. Langendorf United Bakeries Inc.,* 324 F.2d 82 (9th Cir.1963), at least in part because patents maintain a presumption of validity, *see Hieger v. Ford Motor Co.,* 516 F.2d 1324, 1326–27 (6th Cir.1975), *cert. denied,* 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976), here Volkswagen asks the Court to pass on validity and, indeed, claims that the question of validity might be determined by summary judgment. In part, Volkswagen is correct. The question of validity may be determined upon the record presented in support of summary judgment, but it will be determined contrary to the position asserted by Volkwagen therein. The Court has little difficulty in declaring the Weber patent valid, although it is not here infringed.

ACCORDINGLY, judgment will enter declaring that:

1.) Claim 13 of the Weber patent is valid;

2.) Neither Ford nor Volkswagen have infringed Claim 13 of the Weber patent;

3.) Judgment will enter for the defendants Ford and Volkswagen upon Weber's claim;

4.) Judgment will enter for the counterclaim defendant Weber on the Volkswagen counterclaim;

5.) Neither party shall have the costs of this action.